BLOEDE COMPANY v. MAE VENEER PRODUCTS COMPANY.

## Opinion delivered February 7, 1927.

1. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict supported by substantial evidence will not be disturbed on appeal even though it appears to be against the preponderance of the evidence.

2. ACTIONS—CONSOLIDATION OF INTERVENTIONS.—Under Crawford & Moses' Dig., § 1081, relating to consolidation of causes of action, *held* in an action for the purchase price of goods and machinery in which goods and machinery were attached, where one intervener claimed the attached machinery and equipment by purchase and another intervener claimed a mortgage lien therein, it was not error to consolidate the interventions.

3. APPEAL AND ERROR—EXCLUSION OF TESTIMONY—HARMLESS ERROR.—In an action to recover the price of goods, where the issue was as to whether one of the defendants or one of the interveners was an innocent purchaser of such goods, the exclusion of oral testimony that part of the property was purchased by another defendant on the ground that the purchase was witnessed by writing, was harmless error.

4. TRIAL—INSTRUCTION IGNORING ISSUE.—An instruction to find for plaintiff as to certain property in an attachment suit if an intervener made no claim thereto, was properly refused as ignoring a claim thereto of one of defendants as an innocent purchaser.

5. ATTACHMENT—PROPERTY DESTROYED BY FIRE.—In an action of attachment for certain property, it was not error to refuse to direct a verdict for its recovery in favor of the plaintiff if the testimony showed that the property had previously been destroyed by fire.

Appeal from Clay Circuit Court, Western District; *W. W. Bandy*, Judge; affirmed.

*Oliver & Oliver*, for appellant.

*Raley & Ashburn* and *C. T. Bloodworth*, for appellee.

McCULLOCH, C. J.   Appellant, a foreign corporation doing business in Baltimore, Maryland, instituted this action in the circuit court of the Western District of Clay County against Samuel Frelich, doing business under the style of Western Veneer Products Company, to recover the sum of $2,362.87 alleged to be due for the price of a lot of glue sold and delivered by plaintiff to the defendant. At the commencement of this action an

order of attachment was issued and levied on a lot of glue, alleged to be of. the value of $1,400, also machinery and equipment of a veneer plant situated at Knobel, Arkansas, in Clay County. Subsequently an amended complaint was filed, making G. M. Walker, E. L. Walker, Mae Frelich and Mae Veneer Products Company parties defendant. It was alleged in the amended complaint that the attached property had been fraudulently delivered to Mrs. Mae Frelich, who was the wife of Samuel Frelich, or to Mae Veneer Products Company, for the purpose of cheating, hindering and delaying the creditors of Samuel Frelich, including appellant. Appellee, Mae Veneer Products Company, filed an answer and cross-complaint, as intervener, claiming title to all of the attached property by purchase from another corporation, known as the American Investment Corporation, which had purchased from still another corporation, doing business in St. Louis, known as the Western Veneer Products Company. This plea of Mae Veneer Products Company contained a full and complete denial of the charge of fraud in the acquisition of the property in controversy, and alleged that the property was purchased for a valuable consideration, which was paid, and without any notice of any fraud. There was also an allegation that the machinery and equipment in the plant were purchased by the intervener from Frank Sellmeyer, and that the latter had a mortgage lien on the property— that the intervener was the owner, subject to the lien of Sellmeyer. Sellmeyer also filed an intervention, claiming that he had a mortgage lien on the property, and prayed that the lien be enforced. It was also alleged, and the evidence tended to show, that the veneer plant at Knobel, including the equipment and machinery involved in the action, was destroyed by fire, and practically nothing of any value left, except a steam boiler to the engine. There was, over objection of appellant, a trial of the two interventions together, which resulted in a verdict and judgment against appellant and in favor of both of the interveners. Appellant filed a motion for.

a new trial, which was overruled, and then prosecuted this appeal.

The Western Veneer Products Company was a Missouri corporation, domiciled at St. Louis, and owned and operated a veneer plant there and at another place in the State of Missouri. Samuel Frelich, one of the defendants, was connected with that corporation, and was a stockholder and officer, and manager of the business. Defendants, G. M. Walker and E. L. Walker, were also connected with that corporation. The Western Veneer Products Company was thrown into bankruptcy by the Walkers on account of a disagreement between the parties interested, but there was a settlement outside of the bankruptcy court, which ended the bankruptcy proceedings, and the corporation continued to do business under the management of Samuel Frelich. A bill of glue was purchased by that corporation from appellant, at a price aggregating the amount sued for in this action. The glue was shipped to St. Louis to the Western Veneer Products Company, and received there.

There is testimony to the effect that, after the bankruptcy proceedings, the business of the Western Veneer Products Company was conducted by Samuel Frelich for his own benefit, and that the corporate name was merely used as a trade name; that Frelich was the real party in interest, and was the real purchaser of the glue from appellant, but the great preponderance of the evidence, which comes very nearly, if not entirely, undisputed, is that the business was carried on by the corporation, and that Frelich was merely the manager. That question, however, is unimportant, as will hereafter be seen in the discussion.

A portion of the glue sold by the appellant was shipped by the Western Veneer Products Company to the Mae Veneer Products Company at Knobel, Arkansas, and constitutes the property involved in this action, in addition to the machinery and equipment of the plant. The glue was sold by the Western Veneer Products Company to the American Investment Corporation, and by

the latter to appellee, Mae Veneer Products Company. It appears also from the testimony that the American Investment Corporation was controlled by Samuel Frelich.

The veneer plant at Knobel was originally owned by Sellmeyer Brothers, merchants at Knobel, under the partnership style of Southern Novelty Company. The Sellmeyers held a mortgage on the property from the Western Veneer Products Company, and foreclosed it in the chancery court, and bought it for the amount of the decree. After the confirmation of the sale, the Sellmeyers sold the plant to Mrs. Mae Frelich, and executed a bill of sale expressly declaring a lien for the purchase price, and on the same day Mrs. Frelich executed to Frank Sellmeyer, who was acting for the partnership, a promissory note for the price, referring to the bill of sale and the lien. The bill of sale also contained a recital that any machinery or other equipment which might thereafter become attached to and become a part of the plant should be embraced in the lien for the purchase price.

The Mae Veneer Products Company was organized as a domestic corporation, and Mrs. Frelich became the principal stockholder, putting in the machinery and other property connected with it in payment for her stock in the corporation.

Testimony was adduced by appellant to the effect that, at the time the glue was shipped from St. Louis to Knobel, there was also included in the shipment a lot of machinery of the value of about $2,000, which had been purchased from the Walkers. It was the contention of appellant that all of the attached property was, in fact, owned by Samuel Frelich, and that the claim of ownership by Mrs. Frelich and the Mae Veneer Products Company was fictitious—that the alleged sale was fraudulent. On the other hand, the contention of the interveners was that Mrs. Frelich was the purchaser of the property for a valuable consideration, and without knowledge of any fraud on the part of Samuel Frelich or the

Western Veneer Products Corporation. Appellant also contended, and attempted to show, that the sale of the plant by the Sellmeyer Brothers, though on its face made to Mrs. Frelich, was really a sale to the defendant, Samuel Frelich. All these issues were correctly submitted to the jury on instructions requested by each of the parties, and we are of the opinion that the evidence was legally sufficient to sustain a verdict in favor of the interveners.

There was very strong testimony, in the way of proof of family relationship and certain other suspicious circumstances, which tend to show that the purchase of the plant by Mrs. Frelich was colorable, but we cannot say that the testimony is not legally sufficient to support the finding of the jury that the purchase was in good faith and for a valuable consideration. Mrs. Frelich testified to that effect, and it appears the jury accepted her statement as true. We are not concerned with the question of preponderance of the evidence, for, under settled rulings of this court, it is our duty to leave the verdict of the jury undisturbed if there is substantial evidence to support it, even though it appears to us that the finding is against the preponderance of the evidence.

It is earnestly insisted by counsel for appellant that the verdict is without support, but, as before stated, we are unable to agree with them in this contention.

It is next contended that the court erred in consolidating the two interventions for trial together. In the first place, it may be said, in answer to this contention, that the two interventions were so closely related that they could be treated as a joint intervention, for one of the interveners, the Mae Veneer Products Company, claims as the owner of the machinery and equipment, as well as the glue, and the intervener, Sellmeyer, claims as lienor. They could have filed a joint intervention, but the fact that they intervened separately does not affect their real status. Besides, the question of consolidation comes squarely within the statute providing for the consolidation of ''causes of action of like nature or relative

to the same question" pending in the same court. Crawford & Moses' Digest, § 1081. There was therefore no error of the court in this regard.

The next assignment of error relates to the ruling of the court in excluding offered testimony of witness Walker. It was the contention of appellant that part of the machinery in the plant at Knobel was shipped from St. Louis to Knobel, and appellant offered to show by witness Walker that this machinery was sold by the Walkers to Samuel Frelich. It developed in the examination of the witness that there was a written contract with reference to the sale, and the objection was made that the written contract itself was the best evidence of the transaction. It also appeared from the testimony of the witness that he had the contract in his possession, and that it was in St. Louis, and he could not produce it at the trial. The court sustained the objection, and appellant saved an exception. The contention is that the written contract was the best evidence of its terms but that it was competent to prove by oral testimony the identification of the person to whom the sale and delivery were made. The answer to this contention is that we fail to see the materiality of the proof as to who the purchasers really were—whether it was Samuel Frelich or the Western Veneer Products Company, which was under his management. The real question in the case was whether or not the acquisition of the property by Mrs. Frelich or the Mae Veneer Products Company was in good faith and for a valuable consideration, or whether it was colorable for the purpose of defrauding the creditors, and that question was, as we have already said, submitted to the jury on appropriate instructions, and we fail to see any prejudice in the rulings of the court, even if found to be incorrect.

There are two assignments of error with reference to refusal of the court to give instructions requested by appellant. One of the assignments relates to instruction No. 6, which reads as follows:

"Even though you should find for the intervener, F. J. Sellmeyer, yet your verdict will. be in favor of plaintiff as against F. J. Sellmeyer as to the glue attached, and as to the machinery shipped from St. Louis in 1923, if you find any machinery was so shipped."

The first part of this instruction relating to glue is wholly abstract, because Sellmeyer made no claim to the glue. There was no such issue in the case, so far as he was concerned. The other portion of the instruction, which related to the machinery alleged to have been shipped from St. Louis, was incorrect, for it is to be remembered that there was joint claim by the two interveners—one claimed ownership and the other a lien on the property, and it would have been misleading to the jury to tell them to exclude the claim of the intervener Sellmeyer on that property. If the jury found, on the other instructions, that the property was purchased by Mae Veneer Products Company and that the purchase was free from fraud, then it was immaterial, so far as appellant was concerned, whether the recovery was in favor of one intervener or the other.

The other instruction covered by assignment is No. 7, which reads as follows:

"You are instructed that, regardless of any other verdict, your verdict will be for the plaintiff and against both the interveners as to the machinery shipped from St. Louis in March and April, 1923, if you find that any machinery was shipped during or about that time, and you will assess the value of said machinery at the time the bond was filed by interpleader, Mae Veneer Products Company."

This instruction was plainly erroneous, for it excluded the machinery alleged to have been shipped from St. Louis in March and April, 1923. This is so for the reason stated above in regard to the court's ruling on instruction No. 6. In addition to what we have said in regard to those instructions, we are unable to discover the materiality of any testimony in regard to any of the machinery alleged to have been shipped from St. Louis,

for witness Sellmeyer testified that, after the fire, there was no property, constituting machinery and equipment, left there of any value, except the boiler. There was nothing to litigate about, except the boiler and the glue. However, even if there was other property there, we think there was no error in the court's ruling.

This covers all the assignments, and our conclusion from the whole case is that there is no error in the proceedings, and the judgment must be affirmed. It is so ordered.